541 F.Supp. 706 (1982)
Albert UNIS, Jr., d/b/a Albert Unis, Jr., Trucking, Plaintiff,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Building Material and Construction Drivers, Local 341, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and Joint Council of Teamsters No. 40, Defendants.
Civ. A. No. 79-3.
United States District Court, W. D. Pennsylvania.
June 23, 1982.
*707 James B. Brown, Pittsburgh, Pa., for plaintiff.
Stanford A. Segal, Pittsburgh, Pa., for Local 341.

OPINION
ZIEGLER, District Judge.
This civil action was instituted by Albert Unis, Jr., d/b/a Albert Unis, Jr., Trucking, against Local 341 of the International Brotherhood of Teamsters.[1] Plaintiff seeks damages under Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1976), alleging a violation of Section 8(b)(4) of that Act.
The relevant facts are as follows. Unis was engaged in the business of hauling dirt, slag and other materials for various companies in Western Pennsylvania. Specifically, during the time period in question, Unis performed services for the following companies: Jones & Laughlin Steel Corporation, a corporation engaged in manufacturing steel and steel products, at its facility in Aliquippa, Pennsylvania; Dick Corporation, a corporation engaged in general construction, at the Jones & Laughlin facility in Aliquippa; Eichleay Corporation, a corporation involved in the construction industry, at the Jones & Laughlin facility in Aliquippa; and Townsend and Bottom, Inc., a Michigan Corporation engaged in the construction industry, at a jobsite in Shippingport, Pennsylvania.
At the time in question, Local 341 was the recognized collective bargaining representative of most of the Unis employees. Plaintiff asserts that, beginning in 1976, members of Local 341 picketed and threatened to picket Unis and its customers in order to force Unis to sign either the Independent Building Trade Agreement or the Independent Haulers Agreement. Plaintiff further contends that the contracts at issue contained unlawfully restrictive subcontracting language, or "hot cargo" clauses, in violation of Section 8(e) of the Labor Management Relations Act. Plaintiff finally asserts that defendant's threats and actual picketingdesigned to force Unis to enter into agreements containing illegal subcontracting languageconstituted a violation of Section 8(b)(4) of the Act.
Currently before this court is the motion of plaintiff for partial summary judgment. The sole issue is whether, as a matter of law, the subcontracting language contained in the Independent Building Trade Agreement and the Independent Haulers Agreement, violates Section 8(e) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 158(e).

I.
Section 8(e) of the Act provides as follows:

*708 It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work.
The specific clauses in dispute are straight forward. Section 19.4 of the Independent Haulers Agreement of 1976 provides as follows:
The Employer agrees to use only Sub-Contractors in `Good Standing' with the Union, and that Sub-Contractors will be subject to this Agreement.
Section 16 of the Independent Building Trade Agreement of 1976 similarly provides:
Subcontracting. The Employers agree that they will not attempt to circumvent the intent of this Agreement by subcontracting work which has heretofore been assigned usually and normally to persons within the job classifications described in Article IV, § 1, hereof.
Prime contractors will not subcontract any work to contractors not in Agreement with the Joint Council of Teamsters # 40 or its affiliated locals.
Upon breach of this section of the Agreement by the Employer, the Employer agrees that the Union shall have the right to revoke the obligations required of it under Article VII Section 1, 2, and 3, until the dispute is resolved by the parties hereto. (emphasis added).
The law is now settled that contract clauses which are limited to primary considerations, such as the preservation or protection of the traditional work of employees in the bargaining units represented by a union, are not proscribed by Section 8(e) of the Act. National Woodwork Manufacturers Association v. N.L.R.B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). In this case, however, there is little doubt that the subcontracting clauses are secondary, and thus fall within the proscriptions of Section 8(e). As one leading commentator has explained:
The NLRB has been least troubled where the Union's demand expressly makes relevant the union or nonunion status of the boycotted employer. A contract clause permitting subcontracting only to organized companies or requiring preference to such employers is readily held unlawful. Here the board thinks it plain that the union is not seeking to keep the work in question within the unit but to prevent nonunion subcontractors from getting it. Lesnick, Job Security and Secondary Boycotts: The Reach of the NLRA Sections 8(b)(4) and 8(e); 113 U.Pa.L.R. 1000, 1032 (1965).
A second commentator has observed:
Another type of clause which restricts the general employer's choice of subcontractors is one which permits him to subcontract only to other employers who are signatories with the union representing his bargaining unit ... [T]he Board and the courts have easily found such clauses to be violations of Section 8(e) because they are infested with the secondary objective of pressing unionism upon outside employers.
Comment, Subcontracting Clauses and Section 8(e) of the National Labor Relations Act, 62 Mich.L.R. 1176, 1193 (1964).
Under the test of National Woodwork, union signatory clauses such as here presented are secondary in objective. They do not seek to preserve work for the employees of the contracting employer by limiting the amount of subcontracting. Nor do they seek to protect the wage and benefit *709 standards of those same employees in their present employment by merely limiting subcontracting to third parties who maintain equivalent standards. Instead, these clauses permit unlimited subcontracting so long as the subcontractors have an agreement with the contracting union. Such clauses are properly viewed as secondary, because they are intended to satisfy union objectives involving employees and employers without the bargaining of work unit. Pacific Northwest Chapter, Etc. v. N.L. R.B., 654 F.2d 1301, 1307 (9th Cir. 1981).

II.
The sole question remaining is whether the subcontracting clauses, although secondary in nature, are nonetheless protected by the construction industry proviso of Section 8(e).
The peculiarities of the construction industry pose special problems for both unions and employers. On any given project, the employer faces numerous options. He may use some of his own workers, subcontract to an employer who will use those same workers, or subcontract to one who will hire workers represented by the same union, a different union, or no union at all. Under these circumstances, the employees and their union are faced with numerous problems: first, maintaining wage levels; second, protecting benefits such as retirement pensions and paid vacations that depend upon continuity of employer contributions; and thirdly, preventing outbreaks of hostility which inevitably surface when nonunion and union workers are placed on the same job at the same time. See Pacific Northwest Chapter, Etc. v. N.L.R.B., supra, 654 F.2d at 1316-1317.
These are among the problems that led Congress, in 1959, to attach the construction industry proviso to Section 8(e) of the National Labor Relations Act. The proviso reads as follows:
[N]othing in subsection (3) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting or repair of a building, structure, or other work.
Local 341 contends that it falls within the construction industry proviso because at least some of the work performed by Unis involved the removal of material from construction jobs. We disagree and conclude, as a matter of law, that the subcontracting clauses at issue do not fall within the protective ambit of the construction industry proviso, and therefore they are violative of Section 8(e) of the Act.
We begin by emphasizing that the construction industry proviso relates only to agreements whereby a contractor promises not to subcontract work on a construction site to nonunion subcontractors. As then Senator John Kennedy explained in discussing Section 8(e) prior to its enactment:
The first proviso under new section 8(e) of the National Labor Relations Act is intended to preserve the present state of the law with respect to picketing at the site of a construction project and with respect to the validity of agreements relating to the contracting of work to be done at the site of a construction project.
* * * * * *
Agreements by which a contractor in the construction industry promises not to subcontract work on a construction site to a nonunion contractor appear to be legal today. They will not be unlawful under section 8(e). The proviso is also applicable to all other agreements involving undertakings not to do work on a construction project site with other contractors or subcontractors regardless of the precise relation between them.
* * * * * *
It should be particularly noted that the proviso relates only to the "contracting or subcontracting of work to be done at the site of the construction." The proviso does not cover boycotts of goods manufactured in an industrial plant for installation at the jobsite, or suppliers who do not work at the jobsite.
*710 105 Cong.Rec. 17900; II Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1433 (emphasis added.)
Plaintiff seems to rely on Pacific Northwest Chapter, Etc. v. N.L.R.B., supra and Carpenters Local 944 (Woelke & Romero Framing, Inc.), 239 NLRB No. 40 (1978), to support its contention that the construction industry proviso is controlling. That reliance is misplaced.
In both cases, it was admittedly found that hot cargo clausesforbidding the subcontracting of work to nonunion companies fell within the construction industry proviso. However in both cases, the clauses were expressly limited to work done at the construction site. For instance, in Pacific Northwest Chapter, Etc. v. N.L.R.B., the agreement in question read as follows:
Employers shall not contract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, firm or company who does not have an existing labor agreement with the union covering such work. 654 F.2d at 1304 (emphasis added).[2]
Likewise, in Carpenters Local 944 (Woelke & Romero Framing, Inc.), supra, the Board found this subcontracting clause, which was expressly limited to work performed at the construction site, within the construction industry proviso:
103.2. The Contractor agrees that neither he nor any of his subcontractors on the jobsite will subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work (including quarries, rock, sand and gravel plants, asphalt plants, ready-mix concrete plants, established on or adjacent to the jobsite to process or supply materials for the convenience of the Contractor for jobsite use) except to a person, firm or corporation, party to an appropriate, current labor agreement with the appropriate Union, or subordinate body signatory to this Agreement.
103.3. Because of the close relationship between individual Contractors and subcontractors at the jobsite and the close community of interests of the employees on the jobsite with respect to on-site work covered by this Agreement, that is, work done at the site of construction, alteration, painting or repair of a building, structure or other work (including quarries, rock, sand and gravel plants, asphalt plants, ready-mix concrete or batch plants, established on or adjacent to the jobsite to process or supply materials for the convenience of the Contractor for jobsite use), herein called "jobsite work", and because of the Union's concern that subcontractors who are not subject to the same total labor costs as those who are party hereto will deprive Union members employed hereunder of work opportunities because of lower labor costs, it is agreed as follows:
103.3.1. The Contractor and his subcontractors shall not subcontract any jobsite work, except to a contractor whose employees on that job are members of a bona fide labor organization, and whose labor costs on such job, at all times during the term of his subcontract hereunder are not less than those of contractors performing similar work to that covered by this Agreement, including, but not limited to, costs of subsistence, vacation, holiday, medical, hospitalization, wages, premiums, dental, life insurance and *711 retirement benefits as provided by this Agreement.
239 NLRB at 243-244. (emphasis added).
In contrast, the subcontracting clauses here do not limit themselves to work done at the site of construction. They prohibit the employer from subcontracting any work to a subcontractor who is not a member of the appropriate union. Consequently, each clause is violative of Section 8(e) on its face.
By way of example, if the clauses here are applied to Unis, they fall without the protective ambit of the construction industry proviso. The clauses would prevent Unis from subcontracting work to nonunion men at jobsites other than construction sites. Furthermore, even if Unis were engaged exclusively in the hauling of materials from construction sites, which is not the case,[3] the subcontracting clauses would prohibit the use of nonunion men at all stages of the loading, unloading and hauling process, both before and after the trucks reached the construction sites.
Such a sweeping prohibition against the subcontracting of work to nonunion men is far beyond the bounds of the construction industry proviso. As the Supreme Court has explained on several occasions, that proviso is "a measure designed to allow agreements pertaining to certain secondary activities on the construction site because of the close community of interests there, but to ban secondary-objective agreements concerning nonjobsite work, in which respect the construction industry is no different from any other." National Woodwork Mfrs. Assn., 386 U.S., at 638-639, 87 S.Ct. at 1265; see also Connell Construction Co. v. Plumbers & Steamfitters, 421 U.S. 616, 630, 95 S.Ct. 1830, 1839, 44 L.Ed.2d 418 (1974).
For the foregoing reasons, we conclude that the subcontracting clauses at issue are, as a matter of law, violative of Section 8(e) of the National Labor Relations Act.[4] The motion of plaintiffs, for partial summary judgment, will be granted.
NOTES
[1] Initially, the suit was instituted against the International Brotherhood of Teamsters, Local 341, and Joint Council No. 40. However, this court granted the motions of the International and Joint Council for summary judgment.
[2] In Pacific Northwest Chapter, Etc. v. N.L.R.B., supra, the Court of Appeals for the Ninth Circuit held: "We find that provisions in a collective bargaining agreement forbidding the signatory employer to subcontract work at a construction site to firms that do not have a contract with the signatory union are within Section 8(e) of the National Labor Relations Act, but are protected by the construction industry proviso to that section. They need not be limited to jobsites presenting the possibility of conflict between union and nonunion workers." 654 F.2d at 1324 (emphasis added).

In the instant case, the two subcontracting clauses do not even limit themselves to construction sites in general, let alone particular jobsites.
[3] As the affidavits of the parties indicate, only a portion of Unis' work during the time period in question took place at construction sites. Unis was involved in a great many types of operations at the J & L Plant, including the hauling of slag and coke, general clean-up for the mill, and removal of debris from construction projects. See Affidavit of Thomas Lively, business agent for Teamsters Local 341, dated March 17, 1982.
[4] We of course reach no conclusion concerning the heart of the lawsuit, namely, whether defendants violated Section 8(b)(4) of the Act. Material issues of fact exist as to whether the activities of Local 341 were designed to force plaintiff into signing the contracts containing illegal subcontracting language or, on the other hand, whether the activities of Local 341 were merely undertaken to force plaintiff to negotiate in good faith with the authorized representative of his employees, i.e., Teamsters Local 341.